# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| WILLIAM HENRY LYON, | No. ED CV 12-1801-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

## I.
## PROCEEDINGS

Plaintiff filed this action on October 23, 2012, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on December 5, 2012, and December 6, 2012. Pursuant to the Court's Order, the parties filed a Joint Stipulation on August 1, 2013, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/
/

## II.

## BACKGROUND

Plaintiff was born on January 27, 1964. [Administrative Record ("AR") at 70.] He has an eleventh-grade education [AR at 129], and has no past relevant work. [AR at 15.]

On March 19, 2009, plaintiff protectively filed an application for Supplemental Security Income payments, alleging that he has been disabled since February 2, 2008, due to "vascular necrosis" in his right hip, arthritis in both knees, Graves Disease, high blood pressure, and thyroid problems. [AR at 70-76, 112-17, 124-31.] After his application was denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR 72-85.] A hearing was held on September 17, 2010, at which plaintiff appeared with counsel and testified on his own behalf. A vocational expert also testified. [AR at 49-69.] On October 22, 2010, the ALJ determined that plaintiff was not disabled. [AR at 10-17.] On August 22, 2012, the Appeals Council denied plaintiff's request for review. [AR at 1-5.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court

must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie

case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

### B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since March 19, 2009, the date of the application. [AR at 12.] At step two, the ALJ concluded that plaintiff has the severe impairments of bilateral hip osteoarthritis, avascular necrosis of the right hip, and right knee degeneration. [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[1] to perform light work as defined in 20 C.F.R. § 416.967(b).[2] Specifically, he found that plaintiff "[can] lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can sit for 6 hours in an 8-hour workday with normal breaks; he can stand and/or walk for 6 hours in an 8-hour workday with normal breaks; he can occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs, but he cannot climb ladders, ropes, or scaffolds; he cannot balance; [plaintiff] is precluded from unprotected heights; he can occasionally push and/or pull with his right lower extremity for pedals or controls." [Id.] At step four, the ALJ concluded that plaintiff has no past relevant work. [AR at 15.] At step five, the ALJ found, based on the vocational expert's testimony and the application of the Medical-Vocational Guidelines, that "there are jobs that exist in significant numbers in the national

---

[1]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[2]   20 C.F.R. § 416.967(b) defines "light work" as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls."

economy that [plaintiff] can perform." [AR at 16.]  Accordingly, the ALJ determined that plaintiff has not been under a disability since March 19, 2009.  [AR at 17.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to properly consider plaintiff's subjective symptom testimony.  [Joint Stipulation ("JS") at 4-9.]  As set forth below, the Court respectfully disagrees with plaintiff and affirms the ALJ's decision.

**PLAINTIFF'S SUBJECTIVE SYMPTOM TESTIMONY**

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  Second, if the claimant meets the first test, the ALJ may only reject the claimant's testimony about the severity of his symptoms upon (1) finding evidence affirmatively suggesting that the claimant was malingering, or (2) offering specific, clear and convincing reasons for doing so. See Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1999); see also Lingenfelter, 504 F.3d at 1036; Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).  The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c).  If properly supported, the ALJ's credibility determination is entitled to "great deference." See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

5

At the administrative hearing, plaintiff testified that he had not applied for work in the several years prior to the hearing "because of [his] hip," and also testified that he cannot work because his pain makes it difficult to "deal with other people." [AR at 54, 57.] Plaintiff stated that he has pain from his right hip down to his knee "all the time," regardless of whether he is standing or sitting. Plaintiff also stated: "I can't hold weight. I can't walk with weight," and affirmed that his pain has been "getting worse with time." [AR at 55.] Plaintiff further reported that his right knee is "pretty shot" and is also worsening with time. He stated that with these impairments, he can only stand for ten or fifteen minutes at a time, and can only walk two blocks at a time before his "leg gets screaming [sic] at [him]." [AR at 56.] He also testified that sitting is painful because it places all his weight on his hip. [AR at 57.] Plaintiff stated that on a typical day, he is "[u]p and down." He sits in his padded chair "for a while"; "get[s] up and move[s] around on the yard"; and "do[es] a little of this, relax[es], do[es] a little bit of that." [Id.] When the ALJ asked plaintiff whether he is "either sitting or standing or walking all day long," plaintiff stated, "Yeah," and also stated that "[i]f it's too bad," he will lie down. [AR at 57-58.] He reported that he lies down a couple of times a day for half an hour to an hour at a time, and that he cannot go eight hours without lying down. [AR at 58.] Plaintiff testified that at the time of the hearing, he was living with a ministry that provided him with room and board, and had lived there for almost four years. [AR at 54.] He reported that his daily activities at the ministry included packing "two or three" boxed meals "here and there," sweeping and mopping the small warehouse, "maybe help[ing] wash a car or two," watching television shows such as CSI and NCIS, and reading his Bible for a couple of hours. [AR at 60-61.] He also reported that he is responsible for doing his laundry and keeping his room clean, and that he attends church services twice a week that last approximately one-and-one-half to two hours. [AR at 61-62.] Plaintiff testified that he takes three Norco a day for his pain, but that "they just kind of take the edge off it and that's about it." [AR at 58-59.] When the ALJ asked whether plaintiff had told his doctor that Norco does not "work" for him, plaintiff stated: "Yeah, we've had that discussion. I don't want anything stronger right now because I don't know what's going to be needed after the surgery and I don't want to be having to be taking more if there's more pain." [AR at 63.] With respect to a job where he could alternate between sitting and

standing at will, plaintiff testified that he could perform the job for "[t]wo, three hours at the most," and could not perform the job for eight hours straight. [AR at 62-63.]

At step one of the two-step credibility analysis, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." [AR at 14.] The ALJ nevertheless concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC findings for plaintiff]." [Id.] At step two, as the record contains no evidence of malingering by plaintiff,[3] the ALJ was required to offer "specific, clear and convincing reasons" for rejecting plaintiff's subjective symptom testimony. See Lingenfelter, 504 F.3d at 1036. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester, 81 F.3d at 834); see also Dodrill, 12 F.3d at 918.

Here, while not all of the reasons the ALJ gave for discounting plaintiff's subjective symptom testimony are legally adequate, three of them are. See Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989). First, the ALJ cited plaintiff's poor work history, noting that plaintiff has had "no significant work for 20 years." [AR at 13.] This finding by the ALJ is supported by plaintiff's testimony, his work history reports, and his earning records. Plaintiff testified that he last worked in a "regular job" in the late 1990's, and also testified that since then, he has only performed work doing "basic yard maintenance and help around cars." [AR at 52.] Further, a work history report in the record reflects that in the fifteen years before plaintiff completed the report, he had only worked as a float builder in 2001, and a day laborer from 2001 to 2006. [AR at 132-39.] Nevertheless, his earning records from those years reflect that he earned just $128 in 2001, and no money at all from 2002 to 2006. [AR at 118-19.] Finally, his earnings before 2001 were similarly low and inconsistent, with approximate yearly earnings of: $1285 in 1984; $1042 in 1985; $2327 in 1990; $5629 in 1991; $2217 in 1992; $898 in 1995; and $542 in 2000. [Id.] In

---

[3] The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest plaintiff was doing so.

1  the remaining years between 1984 and 2010, plaintiff had no earnings at all. [Id.] Based on this
2  work history, the ALJ found that plaintiff's "limited work history before the alleged disability onset
3  date raises questions as to whether [his] current unemployment is actually the result of medical
4  problems." [AR at 13 n.1.] In weighing a claimant's credibility, an ALJ may consider the claimant's
5  prior work record and efforts to work. SSR 96-7p; see also Thomas, 278 F.3d at 958-59. The
6  ALJ's rejection of plaintiff's subjective symptom testimony on the basis of his poor work history is
7  legally adequate and supported by the record. See Thomas, 278 F.3d at 959 (where the plaintiff's
8  work history "was spotty, at best, with years of unemployment between jobs, even before she
9  claimed disability," the ALJ's reliance on the plaintiff's "extremely poor work history" was a clear
10 and convincing to discount her credibility).

11     Second, the ALJ rejected plaintiff's statements because he found that plaintiff's daily
12 activities "undermined the credibility of [his] allegations of functional limitations." Specifically, the
13 ALJ noted that "some of the physical and mental abilities and social interactions required in order
14 to perform [plaintiff's] activities of daily living are the same as those necessary for obtaining and
15 maintaining employment." [AR at 14.] Substantial evidence supports these findings by the ALJ.
16 Plaintiff testified that his daily activities include sweeping, mopping, washing cars, doing his
17 laundry, and cleaning his room. He also testified that he reads for a couple of hours each day, and
18 watches television programs that the ALJ noted each last "an hour long." [AR at 14 n.3-4.]
19 Plaintiff also attends church services twice a week that last one-and-one-half to two hours. While
20 plaintiff should not be "penalized for attempting to maintain some sense of normalcy in [his] life"
21 (Reddick, 157 F.3d at 722), it is acceptable for the ALJ to consider plaintiff's daily activities in
22 determining whether to credit his testimony regarding the severity of his symptoms. See Smolen
23 v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). In this case, the ALJ found that plaintiff can perform
24 light work, which involves the ability to do a certain amount of lifting and carrying, with periods of
25 walking, standing, and sitting. See footnote 2, supra; see also 20 C.F.R. § 416.967(b) ("a job is
26 in [the] category [of light work] when it requires a good deal of walking or standing, or when it
27 involves sitting most of the time with some pushing and pulling of arm or leg controls"). The tasks
28 plaintiff regularly performs -- sweeping, mopping, washing cars, doing laundry, cleaning, reading,

and attending church services twice a week -- are thus likely to be transferable to the environment of the workplace. Fair, 885 F.2d at 603 ("if, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working"); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995); Magallon v. Astrue, 2011 WL 2791258, at *6 (C.D. Cal. July 15, 2011).

Finally, the ALJ noted that plaintiff's medical records "document [he] has the alleged severe impairments ..., but [he] is ambulatory and does not need or require the assistance of assistive devices." [AR at 15.] By contrasting the medically determinable impairments that could reasonably be expected to cause plaintiff's alleged symptoms, with plaintiff's ability to walk without an assistive device, the ALJ implicitly stated that he found plaintiff's allegation of disabling pain in his knee and hip inconsistent with the fact that he does not need an assistive device to walk. Substantial evidence supports this finding by the ALJ. Plaintiff testified that he "can't hold weight" and "can't walk with weight." He also testified that he can only walk two blocks before his leg starts "screaming" at him. Nevertheless, there is no evidence in the record that plaintiff uses or has ever been prescribed an assistive device to ambulate. Further, plaintiff is able to sweep, mop, and wash cars on a regular basis, as the ALJ noted earlier in his decision. An ALJ may use "ordinary techniques of credibility evaluation" (Smolen, 80 F.3d at 1284) and may "draw inferences logically flowing from the evidence." Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996) (citation and internal quotations omitted). The ALJ's discrediting of plaintiff's pain testimony based on his ability to walk without an assistive device is legally adequate. See, e.g., Lewandowski v. Astrue, 2008 WL 4736788, at *11 (E.D. Cal. Oct. 28, 2008) (where the ALJ noted earlier in his decision that the plaintiff performed "a significant amount of walking" on a weekly basis, the ALJ properly rejected the plaintiff's subjective complaints of disabling foot and back pain on the basis that she was able to walk without an assistive device).

Because the ALJ provided clear and convincing reasons to discount plaintiff's allegations of pain and other subjective symptoms, his credibility determination must be upheld. See Green, 803 F.2d at 532. Remand is not warranted.

## VI.

## CONCLUSION

**IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and 2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: August 19, 2013

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE